**LAW OFFICES OF**
**BLAKE GOODMAN, PC**

Blake Goodman
Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 828-4274

*Attorneys for Plaintiff*
*Honey Adelstein*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| HONEY ADELSTEIN,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC.<br>Defendant. | Case No.: 1:26-cv-00304<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681, *et seq.*** |

Plaintiff Honey Adelstein ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendant Equifax Information Services, LLC ("Equifax" or "CRA Defendant").

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §

1681p (permitting actions to enforce liability in an appropriate United States District Court).

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## II. PARTIES

3. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

4. Plaintiff is a natural person who resides in Miliani, Hawaii.

5. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

8. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

9. Any violations by the Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and the Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## III. FACTUAL ALLEGATIONS

10. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

11. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

12. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

13. The FCRA seeks to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

14. Defendant, comprising one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

15. Defendant routinely obtains consumer bankruptcy information for inclusion in consumer reports.

16. Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to

rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers, vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

18. Defendant regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports Defendant sell to third parties such as lenders.

19. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

20. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the Defendant) to make lending decisions.

21. Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of

reported debt, payment history, and dates of delinquencies contained in Defendant's report.

22. The information the Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

23. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

24. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when

it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

25. Defendant is well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts if those debts are listed in the debtor's bankruptcy petition.

26. Defendant is further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

27. Defendant is also notified of consumer bankruptcies by furnishers of information and from the information Defendant independently gathers from third parties.

28. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

29. Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information: inconsistent

with the reported information and/or possessing information that establishes the reported information is inaccurate.

30. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

31. Defendant regularly publishes consumer information that conflicts with information provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

32. Further, Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in Defendant's own files.

33. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant's for its inaccurate consumer reporting following a Chapter 13 discharge.

34. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures which causes Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

35. Plaintiff filed a Chapter 13 Bankruptcy on or about July 30, 2020, in the United States Bankruptcy Court for the District of Hawaii (Case No. 20-00774).

36. Plaintiff's Chapter 13 plan specifically excluded Plaintiff's Rocket Mortgage/Quicken Loans account, opened on November 21, 2017 (account number ending in *4028) (the "Account") from the Chapter 13 bankruptcy, indicating that Plaintiff would continue to maintain the current contractual installment payments and make payments directly to Rocket Mortgage.

37. Plaintiff complied with all obligations and made all payments during the Chapter 13 Bankruptcy.

38. Accordingly, Plaintiff received an Order of Discharge on or about November 3, 2025.

39. In or around December 2, 2025, Plaintiff obtained and reviewed a copy of her credit report from Defendant, to ensure her bankruptcy was being accurately reported.

40. Upon review of her credit report, Plaintiff observed that Defendant reported inaccurate and/or materially misleading information concerning the Account.

41. Plaintiff's Equifax credit report, dated December 2, 2025, reported the Account with a status of discharged in bankruptcy.

42. Defendant incorrectly reported the Account as discharged in Plaintiff's Chapter 13 bankruptcy.

43. The Account should not have been inaccurately reported with a bankruptcy discharge status.

44. Additionally, the Account should have been reported with an accurate status such as "Current" that reflect the actual status of the Account, instead of an incorrect bankruptcy status.

*Plaintiff's Disputes to Defendant*

45. On or about December 6, 2025, Plaintiff mailed a dispute letter to Equifax disputing its reporting of the Account. Plaintiff's dispute informed Equifax that the Account was not discharged in Plaintiff's bankruptcy, and that Plaintiff has continued to make timely payments on the Account.

46. Upon information and belief, Defendant received Plaintiff's dispute.

47. Upon information and belief, Defendant forwarded Plaintiff's dispute to Rocket Mortgage, as required by the FCRA.

48. Equifax failed to respond to Plaintiff's dispute.

49. Equifax failed to correct its reporting, however, and continued to report the Account as having been discharged in Plaintiff's Chapter 13 bankruptcy.

50. On or about February 13, 2026, Plaintiff obtained another copy of her Equifax credit report, and observed that Equifax continued to report the Account as having been discharged in Plaintiff's

51. Despite knowing that the Account was not discharged by Plaintiff's bankruptcy, Equifax continued to verify its inaccurate reporting.

52. Despite ample reason to doubt any such information provided by Rocket Mortgage, Defendant continued to erroneously report the Account in Plaintiff's credit file and/or consumer report.

53. Upon information and belief, Defendant failed to reasonably reinvestigate Plaintiff's dispute. Instead, Defendant mindlessly parroted the inaccurate information provided by Rocket Mortgage without evaluating the substance of Plaintiff's dispute or conducting any reinvestigation at all.

54. Plaintiff has been extremely frustrated by her inability to correct the inaccurate the consumer reporting by Defendant. Plaintiff has expended a substantial amount time and labor to correct this matter, all to no avail.

55. Upon information and belief, Defendant continues to report the Account with an inaccurate status.

56. After Plaintiff's bankruptcy discharge, in or around February 13, 2026, Plaintiff applied for credit with Capital One, approved but at higher rates and worse overall terms due to Equifax's reporting of the Account.

57. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to potential creditors during the process of Plaintiff's credit applications.

58. As a direct result of the Defendants' conduct, Plaintiff has suffered from decreased creditworthiness due to the inclusion of the Account in Plaintiff's credit file and/or consumer reports.

59. As a direct result of the Defendant's conduct, Plaintiff wasted her time, postage, and labor by writing and mailing a dispute.

60. Plaintiff also incurred attorney's fees and charges for a necessary review of her credit reports.

61. As a direct result of the Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to, the above-referenced economic damages, stress, anxiety, mental anguish, sleepless nights, emotional distress, a substantial amount of wasted time, the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting, weight gain, decreased creditworthiness, loss of credit opportunities, dissuasion from seeking credit opportunities, and other damages continuing in nature.

**COUNT I**
**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**

62. Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

63. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

64. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

65. In this case, Defendant inaccurately reported an account that was not included in Plaintiff's Chapter 13 Bankruptcy, as discharged.

66. Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported this information in Plaintiff's consumer reports.

67. When Defendant voluntarily procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

68. Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under the FCRA. Defendant knew or should have

known of its obligations under the FCRA, especially those pertaining to reporting discharged unsecured debts with a zero-dollar balance.

69. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed case law and evidenced in prior cases involving Defendant from which Defendant is on notice of its/their unreasonable procedures concerning the reporting of Chapter 13 discharged unsecured debts.

70. Defendant knew or should have known that the effect of a discharge Order in a Chapter 13 Bankruptcy is to discharge only those debts provided for by the plan or disallowed under 11 U.S.C. § 502, and that debts not provided for in the confirmed plan — including the debt owed to Rocket Mortgage, to which the Trustee's plan made no payments — pass through the bankruptcy unaffected and are not discharged. *See* 11 U.S.C. § 1328(a).

71. Defendant knows that debts not provided for in a Chapter 13 plan and not discharged should not be reported as discharged in bankruptcy or with a zero-dollar balance, and should instead be reported with the account's true status, actual balance, and accurate payment history.

72. Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

73. Yet in this case, Defendant reported the Account, which was not provided for in Plaintiff's confirmed Chapter 13 plan and therefore not discharged, as discharged in bankruptcy with a zero-dollar balance, instead of accurately reporting the Account's true status, balance, and payment history.

74. Defendant had actual knowledge of Plaintiff's bankruptcy, confirmed plan, and Discharge Order, as evidenced by the information it published in Plaintiff's consumer report, including the bankruptcy case number, court, date of filing, and date of discharge, and knew or should have known from those same records that the confirmed plan provided for no payments to Rocket Mortgage and that the Account was therefore excluded from the discharge.

75. Defendant is also on notice from the information reported by the data furnisher, including Plaintiff's continued obligation on and payments toward the Account, that the Account was not included in or discharged by Plaintiff's bankruptcy.

76. Defendant received notice that Plaintiff's debt to Rocket Mortgage was not discharged through public records — including the confirmed Chapter 13 plan and Discharge Order — its own files, and information provided by data furnishers.

77. Defendant had prior notice of its unreasonable procedures for reporting accounts affected by, or excluded from, bankruptcy discharge.

78. Defendant also possessed information from which Defendant should have known the information reported about Plaintiff was inaccurate, as Plaintiff's consumer report includes: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, the terms of the confirmed Chapter 13 plan available in the public record, as well as the status and payment history of the tradeline account/debt at issue.

79. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer file/report.

80. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

81. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

82. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

83. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

84. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting the Account as discharged in bankruptcy with a zero-dollar

balance, thereby erasing Plaintiff's positive payment history, falsely indicating that Plaintiff did not pay the debt, and otherwise failing to report the Account's true status.

85. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

86. Defendant is the direct and proximate cause of Plaintiff's damages.

87. Defendant is a substantial factor in Plaintiff's damages.

88. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

**<u>COUNT II</u>**
**Violation of 15 U.S.C. § 1681i**

89. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

90. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in his or her credit file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

91. If Defendant is unable to verify the accuracy of the information after conducting a reinvestigation, it must delete the disputed tradelines.

92. Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information they reported about Plaintiff and her account was accurate.

93. Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to correct or delete the inaccurate information reported in Plaintiff's consumer reports.

94. Upon information and belief, Defendant continued to blindly rely on inaccurate information provided by the Rocket Mortgage despite possessing information that directly conflicted with the information provided by Plaintiff.

95. Defendant had reason to know that the information furnished by Rocket Mortgage was inaccurate or otherwise unreliable.

96. Upon information and belief, Defendant did not undertake any action to ensure that information received from the Rocket Mortgage was accurate or reliable.

97. Defendant possessed information provided by Plaintiff that directly contradicted the Rocket Mortgage reporting of Plaintiff's Account.

98. Yet despite knowledge of the information's unreliability, Defendant made no independent effort to verify its accuracy.

99. Upon information and belief, Defendant violated the FCRA by failing to provide Rocket Mortgage with all the relevant information regarding Plaintiff, her disputes, and the Account. 15 U.S.C. § 1681i(a)(2)(A).

100. Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

101. Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's dispute.

102. Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's dispute.

103. As a result of Defendant's violation of § 1681i, Plaintiff has suffered actual damages as detailed herein.

104. Upon information and belief, Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

105. Therefore, Defendant acted consciously in failing to adhere to its obligations under the FCRA.

106. Defendant's violation of § 1681i was willful. Therefore, Defendant is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

107. Alternatively, Defendant's violation of 15 U.S.C. § 1681i was negligent. Therefore, Defendant is liable to Plaintiff for statutory and actual damages in an amount to be determined a trial. 15 U.S.C. § 1681o.

108. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

## <u>TRIAL BY JURY</u>

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

B. Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681i;

C. An award of actual, statutory, and punitive damages as provided by the FCRA;

D. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

E. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

F. Punitive damages pursuant to 15 U.S.C. § 1681n;

G. An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

H. All pre-judgment and post-judgment interest as may be allowed under the law; and

I. Any other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 18th day of June 2026.

*/s/ Blake Goodman*
Blake Goodman (SBN: 7436)
LAW OFFICES OF
BLAKE GOODMAN, PC
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274

*Attorneys for Plaintiff,*
*Honey Adelstein*